John Lee **BAIN**, Petitioner-Appellant,

v.

**UNITED STATES** of America, **Respondent-Appellee.**

No. 19902.

United States Court of Appeals, Sixth Circuit.

June 5, 1970.

Joe A. Dycus, Memphis, Tenn., for appellant.

William A. McTighe, Jr., Memphis, Tenn. (Thomas F. Turley, Jr., U.S.Atty., Memphis, Tenn., on the brief), for appellee.

Before McCREE and COMBS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

John Lee Bain appeals from the order of the District Court denying his petition to set aside a sentence for passing and possessing counterfeit money, to which he had previously pleaded guilty. The grounds on which appellant based his motion hereafter appear in the course of the discussion of circumstances surrounding the case.

The background of the pertinent legal proceedings in court in this case commenced when the case was reached for trial and the District Court stated that appellant had theretofore entered a plea of not guilty; that an indication had been received that there would be a change of plea; but that appellant had thereafter stated he had decided not to change his plea, and wanted more time to reflect upon the situation. The court, therefore, set the date of trial for the ensuing Monday, as it was necessary to serve a number of witness subpoenas. The Court then said:

"Well of course, no guilty plea is valid unless it is absolutely free and voluntarily made. We don't want any defendant to be entering a guilty plea reluctantly. He has to convince this Court that that is what he wants to do. Of course, we realize it is a serious decision for a defendant to make, and I am sure every defendant has at least some doubt as to whether he wants to go to trial or enter a guilty plea. But in the end it has to be his decision. You know that, don't you, Mr. Bain?

"DEFENDANT BAIN: Yes, sir.

"THE COURT: And the Court won't consider accepting a guilty plea unless we are convinced that you are making it freely and voluntarily and understandingly.

"Now, Mr Buford (attorney for defendant) stated to the Court that you indicated to him this morning

that you do desire to change your plea from not guilty to guilty. Is that a fair statement? You do want to change your plea, or do you?

"DEFENDANT BAIN: Reluctantly, I am going to change my plea, but when I got in this I didn't know what it was, and I wasn't no counterfeiter.

"THE COURT: You are not indicating to the Court that the counterfeit money which you are charged with passing was not counterfeit or that you did not know it was counterfeit, are you?

"DEFENDANT BAIN: No, sir.

"THE COURT: You understand that you are not charged with making this money. You are not charged with actually making the counterfeit money. I believe you are charged simply with passing it."

There was then some colloquy between the court and the district attorney, after which the court said to appellant:

"THE COURT: Well, of course, you have read this indictment, have you, Mr. Bain?

"DEFENDANT BAIN: Yes, sir.

"THE COURT: You can read?

"DEFENDANT BAIN: Yes, sir.

"THE COURT: Let's see, in Count I you are charged with on May 7th, 1967, with intent to defraud passing to one Benny Hagan on the Midway of the Royal American Shows in Memphis a counterfeited obligation in the amount of a hundred dollars, knowing that it was falsely made and counterfeited. * * *

"In Count II you are charged with on the same day at the same midway with intent to defraud passing to one Johnnie Jenkens Giamportane on the Midway of the Royal American Shows here in Memphis another hundred dollar bill knowing that it was a counterfeited bill.

"In Count III you are charged with on the same day and the same midway with intent to defraud passing to Harlem Review on the Midway a hundred dollar counterfeited bill knowing the same was counterfeited.

"In Count IV you are charged with on the same day, same place, unlawfully keeping in possession, in your possession, counterfeited bills with intent to defraud knowing the same to be counterfeit. * * * So, actually, each of the first three counts are passing counts involving one bill each, and the fourth count is a possession count based on the thirty-six hundred dollars in bills that were found in Mrs. Creel's pocketbook at the time she was arrested with Bain. * * * Mr. Bain, you have heard the Court go over the indictment. You said you already understood what was involved. But we did outline it for you here, and you do want to plead guilty to these four counts, is that right?

"DEFENDANT BAIN: Well, I want to plead guilty all right, yes, sir. I want to plead guilty. I mean I deserve something for being so stupid. I didn't know about that economy stuff until Mr. Churchill explained it to me.

"THE COURT: You didn't know about what stuff?

"DEFENDANT BAIN: I thought it would be just between me and the carnival people, and they would just be out that money."

The court then stated he was not concerned with Bain's grudge against the carnival. The court again asked Bain if he had passed the bills, and whether he knew at the time they were counterfeit. Bain replied that he did pass the bills and knew they were counterfeit.

The court then stated:

"So you do want to plead guilty? You are guilty of these charges, and you want to plead guilty, is that correct?

"DEFENDANT BAIN: Yes, sir.

"THE COURT: Do you make this plea of guilty freely and voluntarily?

"DEFENDANT BAIN: Yes, sir.

"THE COURT: Has anyone promised you anything to get you to plead guilty?

"DEFENDANT BAIN: No.

"THE COURT: Has anyone threatened you in any way to get you to plead guilty?

"DEFENDANT BAIN: No.

"THE COURT: Are you under the influence of any alcohol at this time?

"DEFENDANT BAIN: No, sir.

"THE COURT: Are you under the influence of any drugs at this time?

"DEFENDANT BAIN: No.

"THE COURT: Do you understand the maximum penalty that you could get, that is the most you could get for the offenses to which you are pleading guilty are as follows: Under Count I, a $5,000.00 fine or fifteen years imprisonment or both, and under Count II, a $5,000.00 fine or fifteen years imprisonment or both, and under Count III, a $5,000.00 fine or fifteen years imprisonment or both, and under Count IV a $5,000.00 fine or fifteen years imprisonment or both. Do you understand that?

"DEFENDANT BAIN: Yes, sir.

"THE COURT: And knowing that you want to plead guilty, because you are guilty, is that correct?

"DEFENDANT BAIN: Yes, sir."

Bain admitted that at the time he passed the bills he was wearing false sideburns that came down to his jawbone; that he was wearing pancake makeup that gave him the appearance of being a Mexican; that his nose had been altered with wax or clay to change his appearance further, and that there were indications that some of the makeup had been removed in a restroom just before he was arrested.

Appellant's prior record was then recited by the district attorney which showed he had been sentenced under the Dyer Act and placed under probation for two years because he was, at that time, a juvenile. Another charge and a fine for fraud were disclosed.

Mr. Buford, then appellant's attorney, addressed the court on the nature of the offense, stating that appellant had considered he had been cheated by the carnival company, and his passing the counterfeit bills along the midway was done to get back at all of the carnival people for what they had done to him. What Mr. Buford said on behalf of the appellant was affirmed by appellant himself.

The court then remarked that passing counterfeit money was a serious crime, and that although the court took into consideration appellant's vague notion of getting back at some people he had a grudge against, it was obvious that the people who might have done him wrong were not necessarily the people to whom he was passing the counterfeit money. The court then inquired further into the claimed grudge that appellant had against the "carnival people." The court further questioned the Secret Service agent who had interviewed appellant, and asked him where he got the counterfeit money—who had furnished it to appellant. The agent stated that appellant refused to tell. Appellant then spoke up and told the court he could not tell anyone the source of the counterfeit money, because of his fear of vengeance on the part of the counterfeiters against him and his home and his children.

The court, then, in passing sentence, stated that passing counterfeit money was a serious offense; that the court was "willing to accept the proposition that Bain here had some vague notion of getting back at some people that he had a grudge against, although he kind of used scatter-thought tactics, because it is completely obvious here that the people who might have done him wrong were not necessarily the people he was passing the money to, and he was going up and down the midway passing this counterfeit money. He had passed some bills, and he had thirty-six more—That's thirty-six hundred dollars. So that's a pretty serious proposition and, of course, we all know it is a very difficult thing to run these cases down. It is expensive for the government to protect the cur-

rency, and we have to do something about stopping it.

"I am taking into consideration that he does not have a serious past record, and I am also taking into consideration he is pleading guilty. We always take that into consideration.

"On the plea of guilty of the Defendant, John Lee Bain, to each of the four counts of the indictment, it is the judgment of the Court that he is guilty, and it is further the judgment of the Court that he be sentenced to the custody of the Attorney General or his authorized representative for imprisonment for a period of eight years under each count, each to run concurrent with the other, making a total sentence of eight years.

"The Court wants to thank you, Mr. Buford, for representing this defendant under Court appointment."

Appellant then spoke up and stated:

"Your Honor, I would like to appeal the sentence, because I am not a counterfeiter. That's one reason I want to appeal it.

"THE COURT: Well, you can't appeal a guilty plea.

"DEFENDANT BAIN: He told me I could beforehand. He said it could be done.

"THE COURT: Do you want to set aside your guilty plea and go to trial? Is that what you want to do?

"DEFENDANT BAIN: No, sir. I just didn't think about eight years. My children will be going to school in another year and a half. I don't care for myself. I know I deserve punishment.

"THE COURT: We think the sentence was reasonable under all the circumstances. You could have gotten sixty years, and you got eight years. So just do what you want to do from now on. It's up to you.

"Adjourn us until 9:30 tomorrow morning, Mr. Clerk."

The above sentencing proceedings took place on November 26, 1968. Appellant

did not ask the court to set aside his guilty plea and go to trial, but expressly stated he did not wish to take such action.

On July 28, 1969, appellant filed a motion in the District Court to vacate his sentence on the above-mentioned charge of passing and possessing counterfeit money to which he had pleaded guilty four months previously.

The grounds upon which his motion was based were:

(1) That he was incompetent at the time his guilty plea was entered;

(2) That he is not guilty because he was insane at the time of the alleged crime,

(3) That he was denied effective representation by his court-appointed counsel.

The District Court, on the above motion, held an evidentiary hearing at which appellant Bain appeared as a witness on his own behalf, having been brought from the Atlanta penitentiary to testify in the District Court in Memphis. Appellant's testimony on the evidentiary hearing covers thirty-three typewritten pages. His former counsel, Mr. Thomas A. Buford, was called as a witness by the government, and his testimony runs to thirty-six typewritten pages.

Because of the contentions made on Mr. Bain's behalf by his counsel on appeal, it was ordered that a transcript of the sentencing procedure, and a transcript of the full evidentiary hearing be prepared and filed with this court.

The District Court was markedly concerned with appellant's rights. On May 20, 1969, the court entered an order granting an evidentiary hearing on appellant's motion to vacate the sentence, and at the same time ordered the presence of the appellant at such hearing. In its order, the court said:

"IT APPEARS to the Court that movant, John Lee Bain, has filed a motion to vacate under 28 U.S.C. §

2255 and that he has set out three grounds in support thereof:

"(1)  That he was incompetent at the time his guilty plea was entered;

"(2)  That he is not guilty because he was insane at the time of the alleged crime;

"(3)  That he was denied effective representation by his Court-appointed counsel.

"This Court cannot, on this motion to vacate, determine the guilt or innocence of movant on the factual issues upon which the conviction rests (Nesbitt v. United States, 407 F.2d 397 (6th Cir. decided March 5, 1969) ) and therefore the Court cannot consider movant's claim that he was insane at the time of the alleged crime. The other two grounds alleged will be considered at a hearing to be held.

"It is ORDERED that movant be returned to this jurisdiction and, upon this being accomplished, the Court will make inquiry concerning appointment of counsel for movant and will set the cause for hearing.

"ENTER THIS 20th day of May, 1969."

On August 6, 1969, the court filed its Memorandum Decision and Order Denying Motion to Vacate and Dismissing Action, as follows:

"We have heretofore ruled in our order of May 20, 1969, for reasons set out in that order, that movant cannot now be heard to contend that he was not guilty by reason of insanity of the crime to which he pleaded guilty.

"While it appeared from testimony of movant and statement of his counsel at the hearing that movant is not really contending that he was incompetent at the time he pleaded guilty in the sense that he did not understand the charge and was unable to aid counsel in his defense, the Court finds, based on the entire record including the Court's memory of the proceedings at the time the guilty plea was entered, that movant was competent at that time.

"The main contention of movant appears to be that he did not receive adequate representation by his Court-appointed counsel because, movant contends, he told his counsel that he did not want to plead guilty and wanted to defend on the ground that he was insane at the time of the offense charged and that counsel simply ignored or refused to follow movant's stated desire. We find as facts, however, that movant did not advise his counsel that he did not want to plead guilty and/or that he wanted to defend on the ground of insanity. We further find that nothing appeared that would have put movant's counsel, Government counsel, or the Court on notice that movant might have had such a defense.

"It is therefore ORDERED that the motion to vacate is denied and the action dismissed.

"ENTER this 6th day of August, 1969."

█■ Upon a careful examination of the transcript of the proceedings relating to the plea of appellant, and the transcript of the full evidentiary hearing, we are convinced that appellant has failed to show that he was incompetent at the time his guilty plea was entered; that there was no evidence of his being insane during the commission of the offense charged or thereafter; that the evidence was convincing that appellant never, at any time, indicated to his counsel that he was insane or incompetent either at the time of the crime, or while counsel was handling the case in court; nor did he, in any way, indicate to the court or to anyone else that he was incompetent, or insane at the time of the commission of the crime, or at any time during his hearing before the court before sentence.

In its Memorandum Decision, the court, it is to be repeated, explicitly stated:

"We find as facts, however, that movant did not advise his counsel that he did not want to plead guilty and/or that he wanted to defend on the-ground of insanity. We further find that nothing appeared that would have put movant's counsel, Government counsel, or the Court on notice that movant might have had such a defense."

■ The contention of appellant that he was denied effective representation by his court-appointed counsel is not sustained by the evidence, and is without merit, and the District Court's finding, in this regard, is sustained.

It is to be observed that the District Court was most patient and zealous in questioning appellant in the hearing leading up to the plea of guilty, and during the evidentiary hearing to ascertain every claim having any bearing on appellant's knowledge of what the plea meant, and in ascertaining in detail the circumstances surrounding the actions of appellant before and at the time the offense was committed.

■ Almost all of the argument set forth in the brief of appellant's counsel is based on the claimed erroneous omissions of the District Court to inquire into the voluntary and intelligent nature of Bain's plea of guilty, and that "since the record is silent as to this point, this Court can only assume that the plea was not intelligently and voluntarily made." All of this argument is rendered of no force or effect, since the transcripts of the proceedings relating to the plea, and of the evidentiary hearing, filed in this court, disclose that the District Court assiduously ascertained by repeated questions to appellant that his plea of guilty was made intelligently and voluntarily.

It is contended that the District Court erred in failing to make findings of fact and conclusions of law in disposing of appellant's petition under Title 28 U.S.C.A., Section 2255, and that the same standards applicable to habeas corpus proceedings are applicable to proceedings under Section 2255.

However, under Rule 52 of the Federal Rules of Civil Procedure, it is provided:

"If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein";

and it has been held by this court that a memorandum opinion of a District Court in habeas corpus proceedings, made in lieu of findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure, was not error. Douglas v. Maxwell, 357 F.2d 320, certiorari denied, 385 U.S. 858, 87 S.Ct. 108, 17 L.Ed.2d 85.

■ Since the District Court filed its findings of fact and conclusions of law in a Memorandum Decision, it was not in error in failing specifically to set them forth in an opinion.

One concluding observation remains to be expressed. As remarked by Mr. Buford to the court at the time of sentencing: "If the Court please, this man doesn't have a serious criminal record. His background is rather clean, I would say, and he had one Dyer Act charge as a juvenile, and since then, these other charges are traffic and problems with one parish in Louisiana, and that's about the extent of it."

Bain, himself, had stated to the court that about $3,000 worth of his circus equipment had been stolen from him by the circus people, and that was the reason he was passing the counterfeit money among "circus people." The court remarked:

"I am willing to accept the proposition that Bain here had some vague notion of getting back at some people that he had a grudge against, although he kind of used scatter-thought tactics, because it is completely obvious here that the people who might have done him wrong were not necessarily the people he was passing the money to, and he was going up and down the

midway passing this counterfeit money. * * * I am taking into consideration that he does not have a serious past record."

Whatever the degree of real criminality existed in the mind of Bain when he was committing these offenses, because of a grudge, does not enter into the question of his guilt of violating the counterfeit statutes, and is not for the courts to determine. If his account is true, it is a matter for the Board of Parole, rather than for the courts, to consider.

The court expresses its thanks to Mr. Joe A. Dycus, court-appointed counsel for John Lee Bain on this appeal, for his untiring efforts and services in presenting his argument, brief, and various motions on behalf of appellant, in the best traditions of the Bar.

In accordance with the foregoing, the decision of the District Court dismissing appellant's motion to vacate sentence is affirmed.